IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| SHARON KETTLES | : | |
| 6701 Spruce Mill Drive | : | |
| Yardley, PA 19067 | : | Civil Action No.:_____ |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | |
| | : | |
| CUSTOMERS BANK | : | |
| 99 Bridge Street | : | |
| Phoenixville, PA 19460 | : | |
| | : | |
| Defendant. | : | |

---

## COMPLAINT – CIVIL ACTION

Plaintiff, Sharon Kettles ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant, Customers Bank ("Defendant") alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

## PARTIES

2. Plaintiff, Sharon Kettles, is a citizen of the United States and Pennsylvania, and currently maintains a residence at 6701 Spruce Mill Drive, Yardley, PA 19067.

3. Defendant, Customers Bank, is a financial institution incorporated in the Commonwealth of Pennsylvania, where it maintains a principal place of business at 99 Bridge Street, Phoenixville, PA 19460.

## JURISDICTION AND VENUE

4. On or about July 10, 2017, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. 200035(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2017-03217. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated April 13, 2018, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

6. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

7. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

8. This Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343.

9. The venue in this district is proper pursuant to 28 U.S.C. § 1391, insomuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## FACTS RELEVANT TO ALL CLAIMS

10. Paragraphs 1 through 9 are hereby incorporated by reference, as though the same were fully set forth at length herein.

11. On or about February 24, 2011, Defendant hired Plaintiff into the position of Personal Banker.

12. At all times relevant hereto, Plaintiff worked at Defendant's bank branch located at 1 South Main Street, Yardley PA 19067.

13. At all times relevant hereto, Plaintiff was qualified for her position.

14. During her tenure of employment with Defendant, Plaintiff received positive reviews of her performance, occasional praise, and no significant discipline.

15. In fact, Plaintiff was subsequently promoted to the position of Assistant Branch Manager in or around early 2012.

16. Then, in or around October 2015, Defendant assigned Plaintiff a new branch manager, Vice President, Kevin Beauparlant ("Mr. Beauparlant").

17. At or around the same time, Defendant also transferred in a new assistant manager from another branch, Terrance Meehan ("Mr. Meehan).

18. Subsequently, on or about January 9, 2017, Mr. Beauparlant, and Mr. Meehan terminated Plaintiff, allegedly for her "record of absences."

19. At the time of Plaintiff's unlawful discharge, Defendant had a continuing need for the job duties and responsibilities previously performed by Plaintiff.

20. Indeed, upon information and belief, Defendant replaced Plaintiff shortly after her termination.

### FACTS RELEVANT TO ADA AND FMLA CLAIMS

21. Paragraphs 1 through 20 are hereby incorporated by reference as though the same were fully set forth at length herein.

22. In or around May 2013, Plaintiff was diagnosed with breast cancer.

23. Upon information and belief, Plaintiff made Defendant aware of her condition immediately thereafter.

24. In or around June 2013, Plaintiff began chemotherapy to treat her breast cancer.

25. As such, Plaintiff subsequently asked Defendant for several days off in conjunction with her treatments.

26. Shortly thereafter, it became apparent Plaintiff was having negative reactions to the chemotherapy drugs, necessitating the need for additional time of in order to receive blood transfusions and recover.

27. Defendant readily granted Plaintiff's accommodation requests for additional time off.

28. In or around November 2013, Plaintiff's condition required surgery.

29. As such, Plaintiff once again requested additional time off in order to undergo the surgery, recover, and subsequently obtain radiation therapy.

30. Defendant, once again, granted Plaintiff's request for time off.

31. Upon information and belief, Plaintiff was out of work for approximately seven (7) weeks and returned in or around February 2014.

32. Although Plaintiff returned to work, she was still undergoing injection treatments for her breast cancer until in or around June 2014.

33. By the end of June 2014, Plaintiff's breast cancer was considered "in remission."

34. Plaintiff's aforementioned conditions constitute both serious health conditions under the FMLA and disabilities within the meaning of the ADA, in that each substantially impairs one or more of Plaintiff's major life activities.

35. In the years that followed, Plaintiff was required to attend maintenance appointments with her oncologist and surgeon to confirm her cancer was still in remission.

36. Upon information and belief, Defendant was notified of each appointment.

37. Defendant continually permitted Plaintiff to take time off from work to attend these appointments.

38. In or around late-September 2015, Plaintiff started experiencing debilitating back pain.

39. Shortly thereafter, Plaintiff was diagnosed with severe spinal stenosis, herniated disc, and a cyst on the lower part of her spinal column.

40. Plaintiff's aforementioned conditions constitute both serious health conditions under the FMLA and disabilities within the meaning of the ADA, in that each substantially impairs one or more of Plaintiff's major life activities.

41. As a result, Plaintiff received several injection/epidural treatments during December 2015 and 2016 to ease the pain.

42. Upon information and belief, these treatments were ineffective.

43. Additionally, Plaintiff was told the cyst on her lower spine could not safely be reached without surgery.

44. As such, Plaintiff's orthopedic specialist recommended she undergo spinal fusion surgery, or a Lumbar Laminectomy with Instrumentation.

45. Plaintiff, however, opted to try physical therapy before undergoing such an invasive surgery.

46. Therefore, Plaintiff informed Defendant of her condition in the spring of 2016 and requested leave for a period of eight (8) weeks during June and July of 2016 in order to obtain the necessary intensive physical therapy to improve her condition.

47. Defendant subsequently granted Plaintiff's request for medical leave.

48. When Plaintiff returned to work in August 2016, however, she noticed a change in Mr. Beauparlant's behavior towards her.

49. Upon information and belief, Mr. Beauparlant became increasingly hostile towards Plaintiff.

50. For example, Plaintiff felt as though Mr. Beauparlant was annoyed Defendant had to perform an ergonomic evaluation of Plaintiff's office upon her return to provide her with work equipment, such as a standing desk and new office chair, which would help her perform her duties.

51. Then, in or around September 2016, during a routine maintenance appointment, Plaintiff's physician found an object in her breast which looked suspicious.

52. As such, a biopsy was recommended to confirm the breast cancer had not returned.

53. Upon information and belief, due to a scheduling conflict with Plaintiff's surgeon, an outpatient surgery was unable to be scheduled until on or about December 28, 2016.

54. The subsequent biopsy confirmed Plaintiff's breast cancer was still in remission and that the suspicious object was scar tissue from Plaintiff's prior surgery, which was then preventatively removed.

55. One week prior to the aforementioned surgery, Plaintiff informed Mr. Meehan, now her direct supervisor, that she required preventative surgery in connection with her prior breast cancer diagnosis.

56. Upon information and belief, Plaintiff requested December 28, 2016 off from work in order to obtain surgery, and also informed Mr. Meehan that she may need to take off December 29, 2016 and December 30, 2016, or come in late, in order to recover.

57. Mr. Meehan said, "Okay, see how you feel," "Use your judgment," and "Take whatever time you need."

58. As such, Plaintiff did not report to work on December 28, 2016, in order to receive her surgery, and was subsequently late to work on December 29, 2016 and December 30, 2016, in order to recover from her surgery.

59. Upon information and belief, although Plaintiff was scheduled to leave early on or about December 30, 2016, because of her late arrival, she stayed until the branch closed at 6:30 p.m. that evening.

60. Subsequently, on or about January 9, 2017, Mr. Beauparlant, and Mr. Meehan terminated Plaintiff, allegedly for her "record of absences."

61. Upon information and belief, Mr. Beauparlant provided no records of the absences to which he was referring.

62. Additionally, upon information and belief, Plaintiff was never once disciplined for attendance related issues in her over five (5) years of employment with Defendant.

63. At her termination meeting, Plaintiff expressed to Mr. Beauparlant that her absences and tardiness were directly related to the surgery she received to confirm her breast cancer was still in remission.

64. Upon information and belief, during the meeting, Mr. Meehan verbally confirmed that Plaintiff had in fact requested time off to obtain a surgery directly related to her breast cancer, and that he approved the same.

65. In response, Mr. Beauparlant stated, "It doesn't matter, I already made up my mind."

66. Given the circumstances and timing, it is believed and therefore averred that Defendant terminated Plaintiff's employment because of her actual and/or perceived disabilities, and in retaliation for her request for an accommodation in connection thereto.

67. It is further believed and therefore averred that Defendant terminated Plaintiff's employment because she exercised her right to protected leave to seek treatment for her serious health conditions.

68. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## FACTS RELEVANT TO ADEA CLAIM

69. Paragraphs 1 through 68 are hereby incorporated by reference as though the same were fully set forth at length herein.

70. Plaintiff was born on September 30, 1956, and is sixty-one (61) years old.

71. In or around October 2015, Defendant assigned Plaintiff a new branch manager, Vice President, Kevin Beauparlant ("Mr. Beauparlant").

72. Upon information and belief, Mr. Beauparlant is currently in his early forties (40s) and is therefore significantly younger than Plaintiff.

73. Within two (2) weeks of his start date, Mr. Beauparlant had several conversations with Plaintiff regarding her performance.

74. Upon information and belief, one such conversation was in regards to an issue that dated back to December 2014, before Mr. Beauparlant was an employee of Defendant's.

75. Then, while speaking to Plaintiff about this issue, Mr. Beauparlant mentioned transitioning Plaintiff's job to a primarily customer role.

76. Shortly thereafter, Defendant's Human Resources ("HR") department contacted Plaintiff requesting she complete a time sheet.

77. Upon information and belief, Plaintiff, as an assistant branch manager, was a salaried employee and, as such, was not previously required to record her hours on a time sheet.

78. When Plaintiff asked why she was being required to complete a time sheet Mr. Beauparlant informed her that he changed her job title back to Personal Banker, and that she was no longer a salaried employee.

79. On or about November 2, 2015, Plaintiff received a letter confirming the same.

80. Upon information and belief, Mr. Beauparlant treated similarly-situated, younger individuals differently than he treated Plaintiff.

81. For example, Mr. Meehan, another assistant manager, and several years Plaintiff's junior, was put "in charge" of Plaintiff and her office shortly after his transition to the office in late 2015.

82. Upon information and belief, Mr. Meehan is currently in his early thirties (30s).

83. Upon information and belief, Mr. Meehan was not asked to change titles or to switch from a salary-based employee to an hourly employee.

84. Then, in or around early December 2015, Plaintiff was presented with a letter to sign stating she agreed to the title change, an effective demotion.

85. Uneasy about the change, Plaintiff contacted upper management for an explanation.

86. Shortly thereafter, upper management informed Plaintiff she could retain her title as assistant branch manager.

87. Upon information and belief, following Defendant's decision, Mr. Beauparlant informed Plaintiff that she was "never to do that again."

88. Following this interaction, Mr. Beauparlant continued to be hostile to Plaintiff throughout her employment with Defendant.

89. Then, on or about January 9, 2017, Plaintiff was terminated by Mr. Beauparlant and Mr. Meehan allegedly for her "record of absences."

90. At her termination meeting, Plaintiff expressed that her absences and tardiness were directly related to the surgery she received to confirm her breast cancer had not returned, which was previously approved by Mr. Meehan.

91. During the meeting, Mr. Meehan verbally confirmed the same.

92. In response, Mr. Beauparlant stated, "It doesn't matter, I already made up my mind."

93. Furthermore, Mr. Beauparlant stated, without any explanation for the same, that Plaintiff "hated her job" and was "toxic" to the work environment.

94. As such, Defendant's reasons for Plaintiff's termination of Plaintiff are pretextual.

95. Upon information and belief, Defendant targeted Plaintiff for termination on the basis of her age. At the time of Plaintiff's unlawful discharge, she was sixty (60) years of age, and therefore a member of a protected class under the ADEA.

96. Upon information and belief, Defendant treated similarly-situated individuals differently for dates in which they called out of work or requested leave in order to deal with a medical condition or injury.

97. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her age.

98. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C § 12101, *ET SEQ.*
## DISCRIMINATION AND RETALIATION

99. Paragraphs 1 through 98 are hereby incorporated by reference as though the same were fully set forth at length herein.

100. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

101. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

102. Plaintiff's breast cancer substantially limited her normal cell growth and her ability to engage in several major life activities such as concentrating, sleeping, walking, lifting, running, and standing for long periods of time.

103. Plaintiff's sever spinal stenosis, herniated discs, and spinal cyst substantially limited her ability to engage in several major life activities such as walking, bending, lifting, and sitting or standing for long periods of time.

104. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

105. Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation.

106. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining reasonable accommodations for Plaintiff, and by terminating Plaintiff's employment because of her actual and/or perceived disabilities and request for reasonable accommodations in connection thereto.

107. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.      Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## INTERFERENCE AND RETALIATION

108.    Paragraphs 1 through 107 are hereby incorporated by reference as though the same were fully set forth at length herein.

109.    Defendant employed at least fifty (50) employees within the applicable seventy-five (75) mile radius for each working day in each of twenty (20) or more calendar days in the current or preceding year.

110.    Plaintiff was an eligible employee under the FMLA and was thus entitled to twelve (12) weeks of unpaid leave and/or intermittent leave to seek treatment for her serious health conditions.

111.    Plaintiff provided adequate notice to Defendant of her need for medical leave by giving notice as soon as she became aware of the need for leave and as soon as was practicable, pursuant to 29 U.S.C. § 2612(e).

112. Defendant willfully violated the FMLA by failing to restore Plaintiff to the same or an equivalent position upon her request to return to work after her protected medical leave, and by terminating Plaintiff's employment in retaliation for Plaintiff exercising her right to protected FMLA-leave to care for her serious health condition.

113. The aforementioned actions of Defendant constitute unlawful interference and retaliation under the FMLA.

114. As a result of Defendant's actions, Plaintiff has suffered loss of employment, earnings, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Liquidated damages;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## 29 U.S.C. § 621, *et seq.*
## DISCRIMINATION AND RETALIATION

115. Paragraphs 1 through 114 are hereby incorporated by reference as though the same were fully set forth at length herein.

116. Defendant employed at least twenty (20) employees throughout its various office locations at all relevant times material hereto.

117. Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, in that Defendant unlawfully and illegally discriminated and retaliated against Plaintiff on account of her age, being sixty (60) years old at the time of the unlawful discrimination and, thus, over forty (40) years old.

118. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

119. Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, loss of reputation and standing in the professional community, personal humiliation, embarrassment, and loss of life's enjoyment.

120. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff suffered loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Liquidated damages;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

E. Pre-judgment interest in an appropriate amount; and

F. Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: _____
Michael Murphy, Esq.
Murphy Law Group, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: June 29, 2018

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.